UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MONROE MORRIS, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No. 1:24-cv-01136-TWP-MG |
| ROBBIN MYERS, | ) ) ) |
| Defendant. | ) |

**ORDER ON DEFENDANT'S MOTION TO DISMISS**

This matter is before the Court on a Motion to Dismiss the Second Amended Complaint filed by Defendant Robbin Myers ("Myers") (Filing No. 26). Plaintiff Monroe Morris ("Morris") initiated this lawsuit after sustaining injuries in an incident when Myers, an officer of the Indianapolis Metropolitan Police Department ("IMPD"), attempted to stop him for speeding on his motorcycle. Morris alleges negligent and intentional injury and violations of his Fourth and Fourteenth Amendment rights (Filing No. 24). For the following reasons, the Court **grants in part and denies in part** Myers' Motion.

### I. BACKGROUND

**A. Factual Background**

The following facts are not necessarily objectively true, but as required when reviewing a motion to dismiss, the Court accepts as true all factual allegations in the complaint and draws all inferences in favor of Morris as the non-moving party. *See Bielanski v. Cnty. of Kane*, 550 F.3d 632, 633 (7th Cir. 2008).

On November 8, 2021, Morris was riding his motorcycle near his home (Filing No. 24 at 1). As Morris was riding his motorcycle down a public thoroughfare known as Congress Avenue,

Myers, an IMPD Officer, intentionally jumped in front of his motorcycle with the intent of causing Myers to wreck. *Id*. By intentionally jumping in front of Morris' motorcycle, Myers left Morris with only two choices: (a) strike Myers with his motorcycle and cause her serious bodily harm or (b) lay his motorcycle down to avoid injuring Myers but causing himself serious bodily injury. *Id*. at 3. As a result of Myers' actions, Morris wrecked his motorcycle and sustained personal injuries. *Id*. at 2. To treat his injuries, Morris engaged the services of hospitals, physicians, and physical therapists for medical care, treatment, medication, and X-rays for which he incurred medical expenses. *Id*.

**B.      Procedural History**

Though the Court provided a detailed procedural history in its Order On Plaintiff's Motion to Remand and Defendant's Motion to Dismiss Plaintiff's Amended Complaint, (*see* Filing No. 23), the Court will reiterate the procedural history along with the subsequent developments leading to the instant Motion to Dismiss.

Morris filed his original Complaint in state court alleging only state law causes of action against Myers (Filing No. 1-2 at 10–11). Myers did not timely respond to the original Complaint, and a default judgment was entered against her (Filing No. 1-2 at 31–32). Several months later, Myers appeared in the case and filed a motion to set aside the default judgment, which the state court granted. *Id*. at 76, 132.

Shortly after Myers appeared, Morris learned that Myers was formerly employed by the Indianapolis Metropolitan Police Department ("IMPD") and may have been acting as an IMPD officer at the time of the alleged incident (Filing No. 9 at 5). Morris then filed an Amended Complaint (Filing No. 1-3), which asserted new claims under Section 1983 "to the extent that [Myers] claims she was acting as a police officer with the [IMPD] on November 8, 2021". *Id*. ¶13.

2

The Amended Complaint specifically alleges that Myers "carelessly, negligently and/or intentionally jumped out in front of [Morris'] motorcycle, causing him to wreck" in violation of his Fourth, Eighth, and/or Fourteenth Amendment rights. *Id*. ¶14, 17

On July 9, 2024, Morris filed a motion to reconsider the order setting aside the default judgment ("Motion to Reconsider"). The next day, Myers filed a Notice of Removal, which divested the state court of jurisdiction (Filing No. 1). Nevertheless, on July 12, 2024, the state court denied the Motion to Reconsider (Filing No. 1-2 at 141). On August 12, 2024, Morris filed a motion in state court to certify the July 12, 2024, order for interlocutory appeal ("Motion for Interlocutory Appeal"), which the state court denied the same day. *Morris v. Myers*, No. 49D05-2211-CT-039014 (Marion Sup. Ct. Aug. 12, 2024).

Meanwhile, in this Court, on August 14, 2024, the parties filed a Motion to Remand and Motion to Dismiss (Filing No. 9, Filing No. 10). The Court denied Morris' Motion to Remand and granted in part and denied in part Myers' Motion to Dismiss (Filing No. 23 at 1). The Court granted Morris leave to file a second amended complaint, *id*., and he did so on December 27, 2024 (Filing No. 24). Morris' Second Amended Complaint varies from his Amended Complaint in that he asserts the same claims under Section 1983 but now alleges that Myers "intentionally jumped into the path of [Morris'] moving motorcycle, with the intent of causing him to wreck" in violation of his Fourth and Fourteenth Amendment rights. *Id*. ¶ 14, 17.

## II.   LEGAL STANDARD

A.   **Standard for Dismissal under Rule 12(b)(1)**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) challenges the court's subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). The burden of proof is on the plaintiff, the party asserting jurisdiction. *United Phosphorus, Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 946 (7th

3

Cir. 2003), overruled on other grounds by *Minn-Chem, Inc. v. Agrium, Inc.*, 683 F.3d 845 (7th Cir. 2012) (en banc). "The plaintiff has the burden of supporting the jurisdictional allegations of the complaint by competent proof." *Int'l Harvester Co. v. Deere & Co.*, 623 F.2d 1207, 1210 (7th Cir. 1980). "In deciding whether the plaintiff has carried this burden, the court must look to the state of affairs as of the filing of the complaint; a justiciable controversy must have existed at that time." *Id.*

"When ruling on a motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), the district court must accept as true all well-pleaded factual allegations and draw reasonable inferences in favor of the plaintiff." *Ezekiel v. Michel*, 66 F.3d 894, 897 (7th Cir. 1995) (citation omitted). Furthermore, "[t]he district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Id.* (citation and quotation marks omitted).

**B.      Standard for Dismissal under Rule 12(b)(6)**

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to move to dismiss a complaint that has failed to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When deciding a motion to dismiss under Rule 12(b)(6), the court accepts as true all factual allegations in the complaint and draws all inferences in favor of the plaintiff. *Bielanski*, 550 F.3d at 633. However, courts "are not obliged to accept as true legal conclusions or unsupported conclusions of fact." *Hickey v. O'Bannon*, 287 F.3d 656, 658 (7th Cir. 2002).

The complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In *Bell Atlantic Corp. v. Twombly*, the Supreme Court explained that the complaint must allege facts that are "enough to raise a right to relief above

4

the speculative level." 550 U.S. 544, 555 (2007). Although "detailed factual allegations" are not required, mere "labels," "conclusions," or "formulaic recitation[s] of the elements of a cause of action" are insufficient. *Id.*; *see also Bissessur v. Ind. Univ. Bd. of Trs.*, 581 F.3d 599, 603 (7th Cir. 2009) ("[I]t is not enough to give a threadbare recitation of the elements of a claim without factual support"). The allegations must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. Stated differently, the complaint must include "enough facts to state a claim to relief that is plausible on its face." *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009) (citation and quotation marks omitted). To be facially plausible, the complaint must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

### III.   DISCUSSION

Myers argues that Morris' Second Amended Complaint should be dismissed for three reasons: (1) Morris failed to comply with the Indiana Tort Claims Act; (2) Morris failed to state a claim for his Section 1983 claim under the Fourteenth Amendment; and (3) Myers is entitled to qualified immunity with regards to Morris' Section 1983 claim under the Fourth Amendment (*See* Filing No. 27). Because Myers removed this case on the basis of federal question jurisdiction, the Court will first address whether Morris' Section 1983 claims should be dismissed. The Court will then consider whether it should exercise supplemental jurisdiction over Morris' state law claims and, if it should, whether the state law claims should be dismissed.

**A.   Count II: Civil Rights Violations-Section 1983 Claims**

To the extent that Myers claims she was acting as a police officer with the Indianapolis Metropolitan Police Department on November 8, 2021, Morris pleads the alternative theory of

5

recovery "against Officer Robbin Myers arising under the Fourth and/or Fourteenth Amendments of the United States Constitution, and 42 U.S.C. § 1983." (Filing No. 24 at 3–4). In her Motion to Dismiss, Myers argues that Morris' Fourteenth Amendment claim should be analyzed under the Fourth Amendment and that Myers is entitled to qualified immunity against any Fourth Amendment claims (Filing No. 27 at 8–11). The Court will address Myers' arguments in the context of qualified immunity, since the Court must decide whether Myers is immune from suit before reaching the merits of Morris' claims. *See Hunter v. Bryant*, 502 U.S. 224, 227 (1991) ("[B]ecause '[t]he entitlement is an immunity from suit rather than a mere defense to liability,' we repeatedly have stressed the importance of resolving immunity questions at the earliest possible stage in litigation." (second alteration and emphasis in original) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985))).

### 1. Standard for Qualified Immunity

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citation and quotation marks omitted). In determining whether qualified immunity applies, courts consider (1) whether the officer violated a constitutional right; and (2) whether that right was clearly established at the time of the alleged violation. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). "A right is 'clearly established' when it is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Lovett v. Herbert*, 907 F.3d 986, 992 (7th Cir. 2018) (quoting *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (quotation marks omitted)).

"The plaintiff bears the burden of establishing the existence of a clearly established constitutional right." *Kernats v. O'Sullivan*, 35 F.3d 1171, 1176 (7th Cir. 1994). "In delimiting the

contours of a right, [courts] look first to case law on point or in closely analogous areas because it 'permits [a court] to conclude that reasonably diligent government officials would have known of the case law, related it to the situation at hand, and modeled their conduct accordingly.'" *Id*. (quoting *Lojuk v. Johnson*, 770 F.2d 619, 628 (7th Cir. 1985), *cert. denied*, 474 U.S. 1067 (1986)).

Although Supreme Court caselaw "does not require a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate." *White v. Pauly*, 580 U.S. 73, 79 (2017) (alteration and internal quotation marks omitted). "The Supreme Court has 'repeatedly told courts . . . not to define clearly established law at a high level of generality,' and the Seventh Circuit has long held that 'the test for immunity should be whether the law was clear in relation to the specific facts confronting the public official when he acted.'" *Volkman v. Ryker*, 736 F.3d 1084, 1090 (7th Cir. 2013) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011), and *Colaizzi v. Walker*, 812 F.2d 304, 308 (7th Cir. 1987)).

Qualified immunity is an affirmative defense that is typically raised on summary judgment, but it may be raised in a motion to dismiss. *Stevens v. Umsted*, 131 F.3d 697, 706 (7th Cir. 1997). "At that earlier stage, it is the defendant's conduct as alleged in the complaint that is scrutinized for 'objective legal reasonableness.'" *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996) (emphasis in original). "Ultimately, dismissal under Rule 12(b)(6) is appropriate based on qualified immunity only when the plaintiffs' well-pleaded allegations, taken as true, do not 'state a claim of violation of clearly established law.'" *Hanson v. LeVan*, 967 F.3d 584, 589 (7th Cir. 2020) (quoting *Behrens*, 516 U.S. at 306). As such, the Court will address whether Morris' Section 1983 claims state a claim for a violation of clearly established law.

2. **Fourteenth Amendment Claim**

Myers argues that Morris' Fourteenth Amendment claim should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach (Filing No. 27 at 9). The Court agrees.

The Second Amended Complaint alleges in the alternative, that at all times relevant to this action, Myers was a law enforcement officer and an employee of the IMPD and the City, who was performing her duties for and acting as an officer of IMPD and was acting under color of State law when she caused him to wreck for what she perceived as a potential speeding violation (Filing No. 24 at 3–4). The Second Amended Complaint further alleges that Myers "used excessive, unreasonable, and unnecessary force when she jumped in front of [his] motorcycle with the intention of causing [him] to lay down his motorcycle" and wreck. *Id*. at 4.

The Supreme Court in *Graham v. Connor* held that "*all* claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach." 490 U.S. 386, 395 (1989) (emphasis in original). Morris' claim is precisely the type of claim the Supreme Court held should be analyzed under the Fourth Amendment. He alleges that Myers, as a law enforcement officer, used excessive force when she jumped in front of his motorcycle while acting as an officer under the color of state law.

Morris argues that this conclusion ignores the protections he is afforded against the deprivation of his life by a police officer (Filing No. 29 at 8). To Morris, his additional assertion that Myers' actions were taken with the *intent to cause him to wreck*, the consequences of which

8

are likely to be fatal, cause his rights against deprivation of life to be invoked. *Id*. The Court disagrees.

The United States Supreme Court in *Graham* contemplated the assertions that Morris alleges here. Indeed, in *Graham*, the Supreme Court stated that all claims of excessive force "deadly or not" during the course of a seizure of a free citizen should be analyzed under the Fourth Amendment. *Graham*, 490 U.S. at 395. The assertion that an officer *intended* to use deadly force does not transform the Court's analysis from a reasonableness standard under the Fourth Amendment into a substantive due process approach under the Fourteenth Amendment. Analyzing such assertions under a substantive due process approach any time a plaintiff additionally alleges intent would allow those plaintiffs to circumvent the holding of *Graham*. Accordingly, the Court finds that Morris' excessive force claim must be analyzed under the 'reasonableness' standard under the Fourth Amendment.

Morris points the Court to *Wilkinson v. Austin*, 545 U.S. 209 (2005) ([Filing No. 29 at 8](Filing No. 29 at 8)). Morris argues that the "Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake." *Id*. (quoting *Wilkinson*, 545 U.S. at 221). However, the Supreme Court in *Wilkinson*, addressed a prison policy which placed convicted individuals into a supermax prison without notice or opportunity to challenge this placement. 545 U.S. at 209. The Supreme Court found that the prison policy consisting of informal and non-adversarial procedures were adequate to protect the plaintiff's Fourteenth Amendment liberty interest. *Id*. at 229.

Here, Morris is not a prisoner, he does not allege that he was ever detained or charged with any crime, and he was not subject to any similar policy at issue in *Wilkinson*. Rather, Morris alleges

that he was a motorcyclist subject to excessive force during a traffic stop due to a perceived speeding violation. Accordingly, *Wilkinson* is inapplicable.

Because the Supreme Court in *Graham* made clear that excessive force claims within the context of an investigatory stop or seizure should be analyzed under the Fourth Amendment, Morris' Fourteenth Amendment claim is **dismissed**.

### 3. Fourth Amendment Claim

Myers argues that the Second Amended Complaint fails to allege that a clearly established right under the Fourth Amendment was violated and the new allegations that Myers' actions were deliberate or intentional does not change the analysis (Filing No. 27 at 10). In Response, Morris argues that he had a right to be free from unreasonable force, including deadly force, because he had a right to ride his motorcycle down the street without a police officer intentionally jumping in front of him with the intent to cause a wreck (Filing No. 29 at 10). Taking Morris' allegations as true—that Myers intentionally jumped in front of Morris' motorcycle with the purpose of causing him to wreck leaving him with the choice of either hitting Myers with his motorcycle or laying down the motorcycle and wrecking himself—the Court concludes that at this stage of the proceedings, Myers is not entitled to qualified immunity for the Fourth Amendment Claim.

"An officer can violate the Fourth Amendment if [s]he 'unreasonably create[s] the encounter' and the suspect is 'unable to react in order to avoid presenting a deadly threat' to the officer." *Reynolds v. Shelton*, 2024 U.S. App. LEXIS 26391, *10 (7th Cir. 2024) (quoting *Estate of Starks v. Enyart*, 5 F.3d 230, 234 (7th Cir. 1993) (second alteration in original)). In *Enyart*, IMPD officers responded to reports of a stolen taxicab. 5 F.3d at 232. Officers located the taxicab in a parking lot and three officers parked two police cars behind the taxicab. *Id*. The officers then got out of their vehicles and surrounded the vehicle with one of the officers ("Officer Black")

10

walking around another car next to the taxicab to move in front of it blocking an escape route. *Id*. Seeing the officers surround his car, the decedent ("Starks") slammed the door of the taxicab shut and attempted to drive forward but the escape path was blocked by a utility pole. *Id*. Starks then reversed the cab into the police vehicles to improve his angle of escape as to avoid the utility pole. *Id*. Starks, approximately ten feet away from the utility pole, then floored the accelerator. *Id*. Witness testimony indicated that Officer Black was behind the utility pole when Starks first accelerated forward and then, only after Starks began moving forward towards the utility pole the second time at a high rate of speed, jumped in front of the vehicle. *Id*. All three officers then fired their weapons killing Starks. *Id*. The Seventh Circuit then concluded that Officer Black was not entitled to qualified immunity for the Fourth Amendment claims against him because "taking [Starks'] version of the facts, [Officer Black's] unreasonable action prompted the danger he faced" and "[p]olice officers who unreasonably create a physically threatening situation in the midst of a Fourth Amendment seizure cannot be immunized for the use of deadly force." *Id*. at 234.

*Enyart* establishes Morris' right to be free from the use of deadly force under the circumstances alleged in the Second Amended Complaint. Accepting Morris' allegations as true, Myers' actions unreasonably created a physically threatening situation likely to result in substantial injury or death. Morris alleges that he was left with the choice of striking Myers with his motorcycle possibly killing her or wrecking the vehicle causing himself substantial injury or death. As the Seventh Circuit stated in *Starks*, the "key dispute for the factfinder will be whether [Myers] stepped in front of [Morris'] rapidly moving [motorcycle], leaving [Morris] no time to brake. If [she] did, then [Myers] would have unreasonably created the encounter that ostensibly permitted the use of deadly force to protect [her]." 5 F.3d at 234. Accordingly, Myers is not entitled to

11

qualified immunity on Morris' Fourth Amendment claim and her Motion to Dismiss is **denied** as to this claim.

B. **Count I: Negligence And/Or Intentional Conduct**

Congress has authorized federal courts to exercise supplemental jurisdiction over state law claims if they form part of the same "case or controversy" as the claims over which they have original jurisdiction. 28 U.S.C. § 1367. However, a court may decline to exercise supplemental jurisdiction if it has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3). The parties do not dispute that Morris' state law claims—Count I: Negligence And/Or Intentional Conduct—form the same case or controversy, and the Court concludes that they do. Because the Court concludes that Morris' Fourth Amendment claim shall proceed, the Court exercises supplemental jurisdiction over his state law claims in Count I.

Myers contends that Morris' state law claims should be dismissed for lack of jurisdiction under Rule 12(b)(1) because his claims are barred by Ind. Code § 13-34-3-5 and Ind. Code § 34-13-3-3(8)(A) of the Indiana Tort Claims Act ("ITCA") (Filing No. 27 at 4–8). Morris argues that the ITCA does not apply, and Myers is not protected by law enforcement immunity because he alleged that she is a neighbor rather than a police officer (Filing No. 29 at 5). Morris also contends that many questions remain as to Myers' employment status with the IMPD at the time of the incident making disposition of any potential ITCA issues not appropriate for a motion to dismiss. *Id*. at 7. The Court will address each issue in turn.

1. **Ind. Code § 34-13-3-5**

The ITCA limits when a plaintiff may sue a governmental employee personally. *Busbong v. Williamson*, 790 N.E.2d 467, 471 (Ind. 2003). Specifically, Ind. Code § 34-13-3-5(b) "provides that a 'lawsuit alleging that the employee acted within the scope of the employee's employment

12

bars an action . . . against the employee personally.'" *Niksich v. Cotton*, 810 N.E.2d 1003, 1004 (Ind. 2004) (quoting Ind. Code. § 34-13-3-5(b)). A plaintiff may overcome this bar only if they allege that the government employee's act or omission was "criminal, outside the scope of employment, malicious, willful and wanton, or for the personal benefit of the employee." *Id*. (citing Ind. Code § 34-13-3-5(c)). Morris' state law claims are not barred by Ind. Code § 34-13-3-5 because his allegations fall within the exceptions.

Pursuant to Rule 8 of the Federal Rules of Civil Procedure, a party may plead alternative theories of relief even if the theories are inconsistent. *Clevenger v. City of N. Webster Police Dep't*, 1:15-cv-337, 2016 U.S. Dist. LEXIS 84109, at *7 (N.D. Ind. June 28, 2016) (citing *Cromeens, Holloman, Sibert, Inc. v. AB Volvo*, 349 F.3d 376, 397 (7th Cir. 2003)). Morris does precisely this. Myers is correct that Morris' Fourth Amendment claim alleges that Myers was acting within the scope of her employment (Filing No. 24 at 3 ¶ 16). However, this allegation is preceded by the following: "To the extent [Myers] claims she was acting as a police officer with the [IMPD] on November 8, 2021, [Morris] pleads the following alternative theories of recovery." *Id*. at 3 ¶ 13. Further, prior to asserting a Fourth Amendment claim under an alternative theory of liability, Morris brings state law claims alleging that Myers was merely a resident of Marion County who intentionally caused him to wreck. *Id*. at 1–2. As the Seventh Circuit discussed in *Cromeens*, a plaintiff may plead alternative theories of relief even if the theories are inconsistent. 349 F.3d at 397. Accordingly, Morris has properly alleged that Myers' actions were outside the scope of her employment for his state law claims as he alleges she was acting as merely a resident of Marion County.

When reviewing a Rule 12(b)(1) or 12(b)(6) motion, this Court may take judicial notice of public records including state court records without converting the motion to a motion for

13

summary judgment. *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 554 (7th Cir. 1999); General Elec. Capital Corp. v. Lease Resolution Corp. 128 F.3d 1074, 1081 (7th Cir. 1997) (holding that district court could take judicial notice of undisputed fact in the public records to support 12(b)(6) motion). Myers has properly designated the transcript of a state court hearing to provide adjudicative facts made during the hearing which undermine Plaintiff's allegations made within his state law claim. (Filing No. 27-1). These records support that at the time of the incident, Myers was near her home, her shift with the IMPD had ended,[1] her patrol beat was not in the area of the collision, and she did not issue a citation to Morris for allegedly speeding.[2] Thus, it is unclear whether Myers was acting as a police officer at the time of the incident.

Regardless, even if Morris failed to allege that Myers' action were outside the scope of her employment, he alleges that she did so with the intention of causing him to wreck. Thus, his allegations fall within the willful and wanton exception of Ind. Code § 34-13-3-5(c). "Plausible allegations of willful and wanton conduct may preserve a state tort claim against an officer in his or her individual capacity." *Catalano v. Cnty. Of Starke*, 3:24-cv-170, 2025 U.S. Dist. LEXIS 68649, at *13 (N.D. Ind. April 9, 2025) (citing Ind. Code § 34-13-3-5(c)(4)). "Willful and wanton conduct under the ITCA requires 'an intentional act done with reckless disregard of the natural and probable consequence of injury to a known person under the circumstances known to the actor at the time,' or 'an omission or failure to act when the actor has actual knowledge of the natural and probable consequence of injury and his opportunity to avoid the risk.'" *Id*. (quoting *Ellis v. City of Martinsville*, 940 N.E.2d 1197, 1204–05 (Ind. Ct. App. 2011). "An officer 'must have knowledge

---

[1] Myers' affidavit states that she was on duty, (Filing No. 1-2 at 94), but her deposition indicates that the day of the collision could have been her last day working as an IMPD patrol officer and her shift may have ended prior to the accident (Filing No. 9-9 at 4:11–20). For the purposes of this Motion to Dismiss, the Court resolves all disputes of fact in favor of Morris. Accordingly, for this Motion only, the Court infers that Myers was no longer on duty.

[2] The original deposition pages numbers differ from the ECF page numbers. The Court will reference the ECF page numbers.

of an impending danger or consciousness of a course of misconduct calculated to result in probable injury' and 'must have exhibited an indifference to the consequences of his conduct.'" *Id*. (quoting *Ellis*, 940 N.E.2d at 1205). The Court concludes that Morris sufficiently alleges that Myers acted willfully and wantonly by alleging that she jumped in front of his motorcycle with the intention of causing him to wreck.

Morris' allegations sufficiently fall under both the 'outside the scope of employment' and the 'willful and wanton' exceptions of Ind. Code § 34-13-3-5(c). As such, the Court does not find that Morris' state law claims are barred by Ind. Code § 34-13-3-5.

### 2. **Ind. Code. § 34-13-3-3(8)(A)**

Next, Myers contends that Morris' state law claims should be dismissed because she is immune pursuant to Ind. Code § 34-13-3-3(8)(A) (Filing No. 27 at 7). Morris contends that dismissal pursuant to Section 34-13-3-3(8)(A) is inappropriate for the same reasons dismissal is inappropriate under Section 34-13-3-5 above—he does not allege that Myers was acting in her official capacity and instead alleges that she was acting as merely a resident of Marion County (Filing No. 29 at 7). The Court concludes that Section 34-13-3-3(8) does not bar Morris' state law claims.

Ind. Code § 34-13-3-3(8)(A) provides in relevant part, "[a] governmental entity or an employee acting within the scope of the employee's employment is not liable if a loss results from . . . [t]he adoption and enforcement of . . . a law . . . unless the act of enforcement constitutes false arrest or false imprisonment." Here, because the Court concludes above that Morris alleges that Myers was acting outside the scope of her employment, Section 34-13-3-3(8)(A) immunity does not apply. As stated above, Morris may plead in the alternative and questions remain as to whether Myers was acting within the scope of her employment or acting as a resident of Marion County.

15

As such, his state law claims alleging that Myers was merely acting as a resident of Marion County when she jumped in front of his motorcycle intending to cause him to wreck are not barred by Ind. Code § 34-13-3-3(8)(A).

At this stage of the proceedings, the Court does not find that Morris' state law claims are barred by either Ind. Code § 34-13-3-5 or Ind. Cod § 34-13-3-3(8)(A). Accordingly, Myers' Motion to Dismiss is **denied** as to Morris' state law claims.

### IV. CONCLUSION

A motion to dismiss does not test whether the plaintiff will prevail on the merits but instead whether the claimant has properly stated a claim. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). For the reasons explained above, the Court finds that Morris' Fourth Amendment and state law claims have survived the initial hurdle of a motion to dismiss. Myers' Motion to Dismiss the Second Amended Complaint ([Filing No. 26](#)), is **GRANTED in part and DENIED in part**. The Motion is **granted** as to Count II: Section 1983 claim for a violation of Morris' Fourteenth Amendment rights. This claim is **dismissed with prejudice**. The Motion is **denied** as to Count II: Section 1983 claim for a violation of Morris' Fourth Amendment rights and Count I in its entirety. These claims shall proceed.

The **Clerk is directed** to correct the docket to reflect that Dkt. 24 is the Second Amended Complaint.

**SO ORDERED**.

Date: 8/21/2025

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

Distribution:

Shannon Bogard Mize
SHARTZER LAW FIRM, LLC
smize@shartzerlaw.com

Brandon Robert Newhart
Consolidated City of Indianapolis and County of Marion
brandon.newhart@indy.gov

Jason A. Shartzer
SHARTZER LAW FIRM LLC
jshartzer@shartzerlaw.com