**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| MONROE MORRIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:24-cv-01136-TWP-MG |
| | ) | |
| ROBBIN MYERS, | ) | |
| | ) | |
| Defendant. | ) | |

<u>**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**</u>

This matter is before the Court on a Motion for Summary Judgment (Filing No. 57) filed by Defendant Robbin Myers ("Myers"). Plaintiff Monroe Morris ("Morris") initiated this action after sustaining injuries when Myers, an officer of the Indianapolis Metropolitan Police Department ("IMPD"), attempted to stop him from allegedly speeding on his motorcycle which resulted in him crashing his bike. Morris alleged negligent and intentional injury and violations of his Fourth and Fourteenth Amendment rights (Filing No. 24). The Court dismissed Morris' claims for a violation of his Fourteenth Amendment rights and his Fourth Amendment and state law claims survived the initial hurdle of motion to dismiss (Filing No. 45). For the following reasons, Myers' request for summary judgment on the remaining claims is **denied**.

**I.    <u>BACKGROUND</u>**

The following facts are not necessarily objectively true, but as required by Federal Rule of Civil Procedure 56, the facts are presented in the light most favorable to Morris as the non-moving party. *See Zerante v. DeLuca,* 555 F.3d 582, 584 (7th Cir. 2009); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986).

A.    **IMPD Rules and Regulations Concerning On/Off-Duty**

IMPD Rules and Regulations define when an officer is "On Duty." (Filing No. 57-1 at 2). On Duty begins when a member reports for a scheduled work period as designated by IMPD, during which the member performs duties as a police officer for the City of Indianapolis. *Id*. On Duty pertains to periods when a member acts "in an official capacity as a police officer," including "even while technically off duty," if the member is "enforcing a law of the State of Indiana" or is "performing those duties in the protection of life and property." *Id*.

IMPD General Order 3.12 is titled "Off-Duty Responsibilities," and states that an off-duty IMPD officer is expected to take "appropriate action" regarding offenses that occur in the officer's presence. (Filing No. 57-3). General Order 3.12 defines "appropriate action" as "action that is both necessary when considering the totality of the circumstances and within the officer's ability to handle at the time, including considerations such as the availability of a weapon, ability to communicate by radio, physical condition, and whether family members are present." *Id*. at 1. General Order 3.12 defines "Off Duty" as the period when a member is not scheduled for normal assigned duties as a police officer. *Id*. While off-duty, IMPD officers are directed not take official action or actively engage in personal disputes or "incidents involving close relatives, associates, or neighbors, expect in extreme emergencies." *Id*. An "extreme emergency" is defined as "a situation where action is required to prevent injury to the off-duty member or another, or to prevent the commission of a felony or other serious offense." *Id*. IMPD officers are also directed to make an incident report if they are directly involved in the action while off-duty. *Id*. at 2.

B.      **The November 8, 2021, Incident**

Morris and Myers both live on Congress Avenue in Indianapolis, Indiana, and thus were neighbors. On November 8, 2021, sometime around 2:00 p.m., Morris was riding his motorcycle on Congress Avenue (Filing No. 57-5 at 21:2–6). While at the stop sign immediately before the crash scene, Morris cranked the throttle on his motorcycle to clear the ejectors on his bike. (Filing No. 57-4 at 44). Around that same time, Myers arrived home in her IMPD uniform as her shift with IMPD ended at 2:00 p.m. (Filing No. 57-5 at 21:2-6). She parked her police vehicle outside of her home and walked to her front porch when she heard a motorcycle engine squeal. *Id*. at 21:7–15. Based on her experience as a law enforcement officer, Myers believed the sound was from a motorcycle speeding down Congress Avenue. *Id*. at 22. Myers then left her front porch and walked back toward the street. *Id*. at 23:18–21.

Cars were parked on both sides of the Congress Avenue and the street allowed only a very narrow lane for vehicles to travel. *Id*. at 23:25–24:3. As Myers approached the street, she walked in front of her police vehicle before stepping out and into the single narrow lane of traffic which Morris was traveling. *Id*. Morris did not see Myers until he observed her "jump out" from in front of her police vehicle and into the street. *Id*. at 52:18–53:3. As Myers stepped or jumped into the street, she put her hands up and told Morris to stop. *Id*. at 52:2–15.

Morris was approximately fifteen feet away when he observed Myers jump out from in front of her police vehicle and into the narrow lane of traffic (Filing No. 57-4 at 52:4–17). When Morris saw Myers, he panicked. *Id*. at 59:21–60:7. In attempting not to hit Myers, Morris tried to get out of her way and was forced to lay his motorcycle down—in other words, crash—which resulted in him to sustaining a broken arm, broken wrists, a broken leg, and injuries to his head and face. *Id*. at 55:15–57:4.

Myers first words to Morris after the crash were, "that's what you get," and "I'm tired of y'all speeding through this neighborhood." *Id*. at 61:3–14. Myers immediately called for other officers and paramedics (Filing No. 57-5 at 89:10–21). Other officers arrived and IMPD Officer Randall Buck wrote an incident report. The Incident Report indicates that the crash was first reported at 2:08 p.m. (Filing No. 62-1). However, no Indiana Officer's Standard Crash Report was prepared as a result of the collision, Myers did not report that she was involved in the collision to her supervisor at IMPD, and she did not issue a citation to Morris for speeding. (Filing No. 57-5 at 37-55). Indianapolis Emergency Management Services were also notified of the collision at 2:08 pm and arrived at the scene of the collision at 2:22 p.m. (Filing No. 62- 2).

## II.    LEGAL STANDARD

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 489–90 (7th Cir. 2007). In ruling on a motion for summary judgment, the court reviews "the record in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante*, 555 F.3d at 584 (citation omitted). "However, inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion." *Dorsey v. Morgan Stanley*, 507 F.3d 624, 627 (7th Cir. 2007) (citation and quotation marks omitted). Additionally, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual

allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth*, 476 F.3d at 490 (citation omitted). "The opposing party cannot meet this burden with conclusory statements or speculation but only with appropriate citations to relevant admissible evidence." *Sink v. Knox County Hosp.*, 900 F. Supp. 1065, 1072 (S.D. Ind. 1995) (citations omitted).

"In much the same way that a court is not required to scour the record in search of evidence to defeat a motion for summary judgment, nor is it permitted to conduct a paper trial on the merits of [the] claim." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001) (citations and quotation marks omitted). "[N]either the mere existence of some alleged factual dispute between the parties nor the existence of some metaphysical doubt as to the material facts is sufficient to defeat a motion for summary judgment." *Chiaramonte v. Fashion Bed Grp., Inc.*, 129 F.3d 391, 395 (7th Cir. 1997) (citations and quotation marks omitted).

## III.    DISCUSSION

Morris surviving claims are under both state and federal law. Specifically, in Count I: Negligence and/or Intentional Conduct, Morris alleges that Myers jumped in front of his motorcycle with the intent of causing him to wreck (Filing No. 24 at 1). In Count II: Civil Rights Violations – §1983 Claims, he alleges that Myers was acting as a police officer when she jumped in front of his motorcycle and exercised excessive, unreasonable, and unnecessary force violating his Fourth Amendment rights. *Id*. at 4.

Myers moves for summary judgment on the grounds that: (A) Morris' claims are barred by the Indiana Tort Claims Act ("ITCA"); (B) Morris cannot establish a Fourth Amendment seizure; and (C) Myers is entitled to qualified immunity with respect to Morris' Section 1983 claim under the Fourth Amendment (Filing No. 58). The Court will first address Myers' arguments in the context of qualified immunity, since the Court must decide whether Myers is immune from suit

before reaching the merits of Morris' claims. *See Hunter v. Bryant*, 502 U.S. 224, 227 (1991) ("[B]ecause '[t]he entitlement is an immunity from suit rather than a mere defense to liability,' we repeatedly have stressed the importance of resolving immunity questions at the earliest possible stage in litigation." (second alteration and emphasis in original) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985))).

## A.    <u>Standard for Qualified Immunity</u>

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citation and quotation marks omitted). In determining whether qualified immunity applies, courts consider: (1) whether the officer violated a constitutional right; and (2) whether that right was clearly established at the time of the alleged violation. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). "A right is 'clearly established' when it is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Lovett v. Herbert*, 907 F.3d 986, 992 (7th Cir. 2018) (quoting *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (quotation marks omitted)).

"The plaintiff bears the burden of establishing the existence of a clearly established constitutional right." *Kernats v. O'Sullivan*, 35 F.3d 1171, 1176 (7th Cir. 1994). "In delimiting the contours of a right, [courts] look first to case law on point or in closely analogous areas because it 'permits [a court] to conclude that reasonably diligent government officials would have known of the case law, related it to the situation at hand, and modeled their conduct accordingly.'" *Id*. (quoting *Lojuk v. Johnson*, 770 F.2d 619, 628 (7th Cir. 1985), *cert. denied*, 474 U.S. 1067 (1986)). Although Supreme Court caselaw "does not require a case directly on point for a right to be clearly

6

established, existing precedent must have placed the statutory or constitutional question beyond debate." *White v. Pauly*, 580 U.S. 73, 79 (2017) (alteration and internal quotation marks omitted).

"The Supreme Court has 'repeatedly told courts . . . not to define clearly established law at a high level of generality,' and the Seventh Circuit has long held that 'the test for immunity should be whether the law was clear in relation to the specific facts confronting the public official when he acted.'" *Volkman v. Ryker*, 736 F.3d 1084, 1090 (7th Cir. 2013) (quoting *Ashcroft v. al Kidd*, 563 U.S. 731, 742 (2011), and *Colaizzi v. Walker*, 812 F.2d 304, 308 (7th Cir. 1987)).

The Court will first determine whether Myers' jumping in front of Morris' motorcycle is a violation of clearly established law.

### B.     **Fourth Amendment**

A seizure under the Fourth Amendment "occurs when an officer, 'by means of physical force or show of authority,' restrains a person's freedom of movement through means intentionally applied." (Filing No. 58 at 12–13 (quoting *Brendlin v. California*, 551 U.S. 249, 254 (2007)). Myers argues that she is entitled to summary judgment because she did not touch Morris while he was riding his motorcycle, she did not attempt to grab him off the motorcycle, did not aim a weapon at him, and merely put her hands up motioning him to slow down (Filing No. 58 at 13). She argues therefore, she did not seize Morris by physical force within the meaning of the Fourth Amendment.

Myers also argues that she did not seize Morris by show of authority because Morris did not submit to her command. She asserts that the Fourth Amendment is not triggered simply because movement ends, but only when movement is terminated through means intentionally applied. *Id*. at 14 (citing *County of Sacramento v. Lewis*, 523 U.S. 833, 844 (1998)) (cleaned up) (explaining how there is not a seizure under the Fourth Amendment "where a pursuing police car sought to stop the suspect only by the show of authority represented by flashing lights and continuing pursuit

but accidentally stopped the suspect by crashing into him"). By raising her hands, Myers explains that she intended only to slow Morris down and "let him be on his way." *Id*. at 15. She argues that Morris' testimony that he panicked and tried to avoid her shows that he did not submit to her show of authority.

Lastly, Myers contends that even if the Court concludes that her actions constituted a seizure under the Fourth Amendment, her conduct was reasonable and therefore not excessive because after entering the roadway in front of Morris' motorcycle, she stepped back to allow him the right of way. It was Morris' braking hard during the approach that caused the motorcycle's rear tire to skid, burn rubber and then crash into the street. *Id*. at 16.

In support of her qualified immunity argument, Myers states that the Court allowed Morris' claims to survive her motion to dismiss based on *Estate of Starks v. Enyart*, 5 F.3d 230, 232–34 (7th Cir. 1993). In *Starks*, the Seventh Circuit held that, an officer who "unreasonably creates a physically threatening situation in the midst of a Fourth Amendment seizure" is not entitled to qualified immunity for the use of deadly force. *Id*. at 234. Myers argues that *Starks* is distinguishable because unlike in *Starks*, she did not step in front of Morris' motorcycle then shoot him because she endangered herself. (Filing No, 58 at 17). Accordingly, she argues Morris cannot establish excessive force, and even if the encounter could be framed as a seizure, the designated evidence does not show any Fourth Amendment violation. *Id*.

Morris responds that the Supreme Court has held that there is a seizure if police action produces the crash at issue (Filing No. 63 at 10 (*Brower v. County of Inyo.*, 489 U.S. 593, 596 (1989); *Starks*, 5 F.3d at 235–36)). Citing *Brower*, Morris argues "[i]t is enough for a seizure that a person be stopped by the very instrumentality set in motion or put in place in order to achieve the result." *Id*. (quoting *Brower*, 489 U.S. at 599). Morris asserts that Myers' self-serving testimony

in her deposition that her intent was merely to slow him down is contradicted by her testimony in the same deposition that she stood directly in the very narrow lane of single traffic facing Morris' motorcycle which she alleges was speeding. *Id*. (citing Filing No. 57-5 at 23:1–10, 26:9–14). Morris testified that the only possible consequence of such actions is for the vehicle to make a sudden and extremely dangerous stop, which is exactly what happened. *Id*. Morris also testified in his deposition that Myers' first words after the crash were "that's what you get," and "I'm tired of y'all speeding through this neighborhood." *Id*. at 12 (citing Filing No. 57-4 at 61:3–14). He contends that Myers use of force was dangerous and deadly compared to Morris' alleged speeding, which is a non-felony offense, where he did not pose a threat to Myers.

Lastly, Morris persuasively argues that Myers is not entitled to qualified immunity for her use of deadly force against him as she unreasonably created a physically threatening situation in the midst of a seizure. Morris likens the facts of this case to *Starks*. *Id*. at 12–13. "An officer can violate the Fourth Amendment if [s]he 'unreasonably create[s] the encounter' and the suspect is 'unable to react in order to avoid presenting a deadly threat' to the officer." *Reynolds v. Shelton*, 2024 U.S. App. LEXIS 26391, *10 (7th Cir. 2024) (quoting *Starks*, 5 F.3d 230, 234 (7th Cir. 1993) (second alteration in original)).

In *Starks*, IMPD officers responded to reports of a stolen taxicab. 5 F.3d at 232. Officers located the taxicab in a parking lot and parked two police cars behind the taxicab. *Id*. Three officers then got out of their vehicles and surrounded the vehicle with one of the officers ("Officer Black") walking around another car next to the taxicab to move in front of it blocking an escape route. *Id*. Seeing the officers surround his car, the decedent ("Starks") slammed the door of the taxicab shut and attempted to drive forward but the escape path was blocked by a utility pole. *Id*. Starks then reversed the cab into the police vehicles to improve his angle of escape as to avoid the utility pole.

9

*Id*. Starks, approximately ten feet away from the utility pole, then floored the accelerator. *Id*. Witness testimony indicated that Officer Black was behind the utility pole when Starks first accelerated forward and then, only after Starks began moving forward towards the utility pole the second time at a high rate of speed, jumped in front of the vehicle. *Id*. All three officers then fired their weapons killing Starks. *Id*. The Seventh Circuit concluded that Officer Black was not entitled to qualified immunity for the Fourth Amendment claims against him because "taking [plaintiffs'] version of the facts, [Officer Black's] unreasonable action prompted the danger he faced" and "[p]olice officers who unreasonably create a physically threatening situation in the midst of a Fourth Amendment seizure cannot be immunized for the use of deadly force." *Id*. at 234.

In the Court's Order on Defendant's Motion to Dismiss, the Court analogized this case to that of *Starks*, and specifically noted that "[a]s the Seventh Circuit stated in *Starks*, the 'key dispute for the factfinder will be whether [Myers] stepped in front of [Morris'] rapidly moving [motorcycle], leaving [Morris] no time to brake. If [she] did, then [Myers] would have unreasonably created the encounter that ostensibly permitted the use of deadly force to protect [her].'" (Filing No. 45 at 11 (quoting *Starks*, 5 F.3d at 234)). The Court once again finds that this case is akin to *Starks*, and the designated evidence shows, at the very least, that a question of fact remains as to whether Myers stepped in front of Morris' rapidly moving motorcycle, leaving him no time to brake.

Myers testified in her deposition that she heard what she knew to be a speeding motorcycle traveling on Congress Avenue (Filing No. 57-5 at 22:12–15). She then walked back to the street, which admittedly did not allow for passing because cars were "parked on both sides of the street[], the north and south sides of the street, allowing a very narrow lane." *Id*. at 24:1–5. Myers then stepped in front of her police vehicle and then into the single lane on Congress Avenue and put her

hands up in the air above her head and off to the side. *Id*. at 28:1–6. Morris testified that Myers was approximately fifteen feet away when she stepped out in front of his allegedly speeding motorcycle (Filing No. 57-4 at 52:16–17).

The Court cannot conclude that Myers' use of force was reasonable, or that she did not violate a clearly established right. Myers unreasonably created a dangerous and possibly deadly situation when she stepped out in front of Morris' allegedly speeding motorcycle with only fifteen feet between them and *Starks* provides a basis for the Courts conclusion that the right was clearly established. Myers' self-serving statement that she did not intend to stop Morris does little in a situation where the only possible outcome is Morris' motorcycle stopping—whether because he avoids Myers and crashes, or he strikes her, possibly killing her, and crashes. In either scenario, Morris would be stopped by the very instrumentality set in motion or put in place in order to achieve the result, *see Brower*, 489 U.S. at 596, and the Court cannot conclude that such instrumentality was reasonable. Accordingly, Myers is not entitled to qualified immunity on Morris' Fourth Amendment claim and summary judgment is **denied**.

## C.    The Indiana Tort Claims Act ("ITCA")

Myers contends that Morris' state law claims are barred by the ITCA for three reasons: (1) Myers was acting within the scope of her employment; (2) Morris did not comply with the ITCA notice requirement; and (3) Ind. Code § 34-13-3-5(c) of the ITCA does not apply and thus, Morris cannot invoke this exception (Filing No. 58).

The Court need not address these arguments as a question remains for the jury concerning whether a Fourth Amendment violation occurred. If the jury finds that a Fourth Amendment violation occurred, Myers will not be shielded from liability by the ITCA and Morris' state law claims will proceed. *See Gupta v. Melloh*, 19 F.4th 990, 1002 (7th Cir. 2021) ("The Indiana

Supreme Court has held that because the Indiana Code limits police officers to using only the force that is reasonable to effectuate an arrest, an officer's use of excessive or unreasonable force is not shielded from liability or subject to immunity under the Indiana Tort Claims Act." (citing *Wilson v. Isaacs*, 929 N.E.2d 200, 203 (Ind. 2010))). Accordingly, Morris' state law claims survive summary judgment on this basis.

Nonetheless, the Court finds it necessary to discuss Myers' first ITCA argument concerning the scope of her employment because, as discussed below, she will be entitled to ITCA immunity pursuant to Ind. Code § 34-13-3-5(b) on her state law claim, if the jury finds no Fourth Amendment violation.

### 1.   **Scope of Employment**

Myers contends that she was acting within the scope of her employment as an IMPD officer when the incident happened, and Myers is also barred from suing her in her personal capacity under Indiana because Morris failed to comply with the notice requirements of ITCA. (Filing No. 58 at 2). She argues that Morris' personal capacity claim against her is barred by Ind. Code § 34-13-3-5(b)–(c). Myers points out that she was still On Duty as her shift ended at 2:00 p.m., she was in full police uniform when she stepped into the street, and her actions were motivated by public safety. She asserts that IMPD rules include On Duty work when an officer acts "in an official capacity as a police officer," including "even while technically off duty," when the officer is "enforcing a law of the State of Indiana" or performing duties "in the protection of life and property." *Id*. at 7 (quoting Filing No. 57-1 at 2). Myers argues the relevant inquiry is not whether she was On Duty or Off Duty at the time of the incident, but whether she was acting in an official law enforcement capacity.

12

Morris responds that there is a material question of fact whether Myers was still On Duty as her shift was scheduled to end at 2:00 p.m. and the incident report states that the incident occurred at 2:08 p.m. (Filing No. 63 at 6). Morris adds that Myers neither prepared an Indiana Standard Officer's Crash Report nor reported that she was involved in the collision to her supervisor at IMPD as police officers are supposed to when On Duty. Morris points out that IMPD Rules and Regulations, specifically General Order 3.12, dictates that while Off Duty, IMPD officers are directed not to take official action or actively engage in personal disputes or "incidents involving close relatives, associates, or neighbors except in extreme emergencies." *Id*. at 7 (quoting Filing No. 57-3 at 1). An "extreme emergency" is defined as "a situation where action is required to prevent injury to the off-duty member or another, or to prevent the commission of a felony or other serious offense." *Id*. Morris concludes that because he is Myers' neighbor and his alleged speeding was not an extreme emergency or a felony or other serious offense, any action Myers took with respect to Morris' alleged speeding was not appropriate pursuant to General Order 3.12. *Id*. at 8.

Morris contends that if Myers had in fact been working within the scope of her duties, she would have reported the incident to her supervisor, prepared a crash report, and would have issued Morris a citation for speeding. Instead, Myers, testified that there were motorcyclists that would drive down her street and Morris told him "that's what you get" and "I'm tired of y'all speeding through this neighborhood," acted as an aggrieved neighbor. *Id*. at 9–10. Morris adds that the question of whether a tortious act of an employee is within the scope of employment is a question of fact. *Id*. at 10.

Myers replies that whether she and Morris "were neighbors is a red herring – neither knew each other at the time, but being near home does not alter her status as a police officer, nor does

being outside of her assigned beat relieve Officer Myers from her police powers and duties." (Filing No. 64 at 6-7). Myers contends that she was acting a police officer, protecting life and property when she attempted to slow Morris down in a residential neighborhood.

Ind. Code § 34-13-3-5(b) bars lawsuits against governmental entity employees if they acted within the scope of their employment. However, if the governmental entity answers that the employee acted outside the scope of the employee's employment, the plaintiff may sue the employee personally. Ind. Code § 34-13-3-5(b). "Whether an act falls within the scope of employment is generally a question of fact." *Cox v. Evansville Police Department*, 107 N.E.3d 453, 460 (Ind. 2018) (citing *Knighten v. E. Chi. Hous. Auth.*, 45 N.E.3d 788, 794 (Ind. 2015)). "But when the relevant facts are undisputed and would not allow a jury to find that the tortious acts were within the scope of employment, [a court] may conclude as a matter of law that they were not." *Id*. (citing *Stropes by Taylor v. Heritage House Childrens Cntr. Of Shelbyville, Inc.*, 547 N.E.2d 244, 248–50 (Ind. 1989)).

IMPD Rules and Regulations consider On Duty acts to pertain to those periods of when an IMPD officer acts in an official capacity "even when technically off duty," if that member is "enforcing a law of the State of Indiana," or while "performing those duties in the protection of life and property." (Filing No. 57-1 at 2). The scope of employment under the ITCA turns on whether the employee's conduct was of the kind she was employed to perform and occurred within authorized time and space limits. See *Celebration Fireworks, Inc. v. Smith*, 727 N.E.2d 450, 453–54 (Ind. 2000). Here, Myers was enforcing a law of the State of Indiana. Even if Myers did not intend to stop Morris or issue him a traffic citation, she was clearly attempting to slow him down to prevent excessive speeding. Thus, she was acting as an On Duty officer pursuant to IMPD Rules and Regulations, and an officer in full police uniform attempting to prevent a motor vehicle from

14

speeding falls within the scope of their employment. Accordingly, the exception will apply if the jury finds no Fourth Amendment violation.

### IV.     CONCLUSION

For the reasons discussed above, Myers' Motion for Summary Judgment (Filing No. 57) is **DENIED**. Count I: Intentional and Negligent Conduct and Count II: Section 1983 Claim for Violation of Morris' Fourth Amendment Rights remain set for final pretrial conference on August 19, 2026 and trial on September 14, 2026. The parties should contact the Magistrate Judge to re-schedule their settlement conference.

**SO ORDERED**.

Date:    6/8/2026

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

Distribution:

Shannon Bogard Mize
SHARTZER LAW FIRM, LLC
smize@shartzerlaw.com

Mathew Rayman
OFFICE OF CORPORATION COUNSEL
mathew.rayman2@indy.gov

Jason A. Shartzer
SHARTZER LAW FIRM LLC
jshartzer@shartzerlaw.com

Caitlin Wilkinson
Connell Michael LLP
caitlin@connellmichaellaw.com